**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**HARRY PALMER and STAR'S EDGE, INC.,**

        **Plaintiffs,**

-vs-                                     **Case No. 6:00-cv-1662-Orl-31JGG**

**ELDON BRAUN,**

        **Defendant.**

## ORDER

This matter comes before the Court after an evidentiary hearing on the Plaintiffs' Motion for Attorney Fees (Doc. 202) and the Defendant's responses (Doc. 204, 241).

**I.    Background**

The Plaintiffs, Harry Palmer ("Palmer") and Star's Edge, Inc. ("Star's Edge"), proceeded to trial on their accusations that the Defendant, Eldon Braun ("Braun"), had engaged in copyright infringement, trademark infringement, false designation of origin, unfair competition, intentional interference with a business relationship, and libel per se.[1]  In their complaint, the Plaintiffs sought to recover their attorneys' fees under the Copyright Act and the Lanham Act.  (Doc. 1 at 23).  After a two-day bench trial, the undersigned concluded that Braun had willfully infringed Palmer's copyright and awarded Palmer $36,000 in statutory damages.  (Doc. 189 at 46).  The Court also

---

[1] In their complaint (Doc. 1), the Plaintiffs had also accused Braun of committing libel per quod, breaching a contract, and misappropriating confidential materials.  They eventually opted not to prosecute those claims because they were unable to obtain discovery or the discovery obtained did not support their claims.  (Doc. 189 at 9, n.17).

enjoined Braun from continuing to sell, publish or distribute his manual, "The Source Course". (Doc. 189 at 47-48). In addition, the Court ruled in Palmer's favor regarding his libel per se claim, awarding $20,000 in compensatory damages. (Doc. 189 ast 70). However, the Court ruled in Braun's favor on the trademark infringement, unfair competition, false designation of origin, and tortious interference claims. (Doc. 189 at 70-71).

Braun appealed to the United States Court of Appeals for the Eleventh Circuit, which affirmed in July 2004. (Doc. 199). The Plaintiffs then moved for an award of attorneys' fees. (Doc. 202). In November 2004, shortly before a hearing was to be held on the attorneys' fees motion, Braun filed for bankruptcy in the United States Bankruptcy Court for the Northern District of California, and this matter was stayed pursuant to 11 U.S.C. § 362. (Doc. 211). The Plaintiffs eventually obtained a determination from the bankruptcy court that any amounts awarded in this case – including attorneys' fees – were non-dischargeable debts. (Doc. 221 at 5).

On August 22, 2005, the Plaintiffs filed a motion (Doc. 222) to reintroduce their previously filed motion (Doc. 202) for attorneys' fees, which this Court granted. (Doc. 229). Braun filed a *pro se* reply (Doc. 241) to the motion, which the Court has considered along with the reply (Doc. 204) filed by Braun's attorney prior to the bankruptcy proceedings. In resolving the motion, the Court has also considered testimony and evidence introduced at the hearing by Plaintiffs' counsel. Braun did not appear for the hearing.

**II.     Standards**

   **A.     Attorney's Fee Awards under the Copyright Act**

   Section 505 of the Copyright Act provides, in relevant part:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against a party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505. Unlike certain other areas of federal law, the Copyright Act neither mandates an award of fees nor favors one party over the other in regard to such an award. Prevailing plaintiffs and prevailing defendants are to be treated alike under Section 505, and attorneys' fees are to be awarded to prevailing parties only as a matter of the court's discretion. *Fogerty v. Fantasy, Inc.*, 510 US 517, 534 (1994).

The touchstone of an attorney's fee award under Section 505 is whether imposition of fees will "further the interests of the Copyright Act, *i.e.*, by encouraging the raising of objectively reasonable claims and defenses, which may serve not only to deter infringement but also to ensure 'that the boundaries of copyright law [are] demarcated as clearly as possible' in order to maximize the public exposure to valuable works." *Mitek Holdings, Inc. v. Arce Engineering Co., Inc.*, 198 F.3d 840, 842-43 (11th Cir. 1999) (quoting *Fogerty*, 510 U.S. at 526-27). To justify an award of fees under Section 505, a prevailing party is not required to show that the losing party acted in bad faith or attempted to maintain a frivolous legal claim. *Sherry Mfg. Co. v. Towel King of Florida, Inc.*, 822 F.2d 1031, 10343 (11th Cir. 1987). "However, the fact that a losing party has acted in good faith or that his legal position had arguable merit will justify an exercise of the district court's discretion in deciding not to award attorney's fees." *Id. See also Lotus Dev. Corp. v. Borland Int'l Inc.*, 140 F.3d 70, 75 (1st Cir. 1998) ("When close infringement cases are litigated, copyright law benefits from the resulting clarification of the doctrine's boundaries. But because novel cases require a plaintiff to sue in the first place, the need to encourage meritorious defenses is a factor

-3-

that a district court may balance against the potentially chilling effect of imposing a large fee award on a plaintiff who, in a particular case, may have advanced a reasonable, albeit unsuccessful, claim.").

### B.    The *Johnson* Factors

Within this Circuit, a district court determining an attorney's fee award must consider the following twelve factors: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir.1974),[2] *abrogated on other grounds*, *Blanchard v. Bergeron*, 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989).  Although the district court must examine each of the *Johnson* factors, it is not obligated to adjust a fee upward or downward in every instance where one or another of the factors is found to be present. *Marion v. Barrier*, 694 F.2d 229, 231 (11th Cir. 1982).  Rather, *Johnson* suggests a balancing process, with the trial judge remaining responsible for the discretionary functions of assessing the weight to be given to each factor and the appropriate adjustments to make in the fee.  *Id.*

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), the United States Court of Appeals for the Eleventh Circuit adopted as binding precedent all decisions of the United States Court of Appeals for the Fifth Circuit handed down prior to the close of business on September 30, 1981.

**III.    Analysis**

The instant case resulted in two published opinions from the United States Court of Appeals for the Eleventh Circuit. In the first,[3] the court addressed two complex and perplexing copyright law issues: nonliteral similarity and the merger doctrine. In the second,[4] the Court helped define the reach of the Copyright Act itself, addressing its impact on allegedly infringing works produced in a foreign country and then imported into the United States. Given the amount of guidance that the instant case has provided to the public and to copyright law practitioners, the Court has no difficulty in concluding that an award of attorney's fees to the party forced to bring it would advance the goals of the Copyright Act. Braun's argument that fees should not be awarded because he had many meritorious defenses that his previous counsel waived is not persuasive, for two reasons. (Doc. 204 at 3). First, even if the existence of such defenses established Braun's good faith in litigating this matter, bad faith on his part is not a prerequisite to an award of fees. Second, the finding of waiver does not establish that the waived defenses had any merit to them.

The Plaintiffs originally sought an award of $520,839.50 in attorney's fees and $2,993.78 in otherwise-unrecoverable costs. (Doc. 202 at 8). At the hearing on this matter, the Plaintiffs sought an additional $44,214.91 for work performed by their counsel in Braun's bankruptcy case and $6,451.45 for work performed by the Sherri DeWitt. The Court now turns to the *Johnson* factors.

---

[3] *Palmer v. Braun*, 287 F.3d 1325 (11th Cir. 2002).

[4] *Palmer v. Braun*, 376 F.3d 1254 (11th Cir. 2004)

### A. The time and labor required

To put it mildly, this was not an easy case. Copyright is a particularly intricate area of the law, and the issues in this proceeding – especially the issue of nonliteral similarity – required painstaking, sentence-by-sentence analysis and argument. Further, the case was vigorously litigated, going up to the Court of Appeals twice. Having reviewed the affidavits filed by attorneys Craig Corbett (Doc. 202-2), Penny Phillips (Doc. 202-3), and Patrick Keel (Doc. 202-4), the Court agrees with the opinion of Plaintiffs' attorney's fee expert, Ava Doppelt, that the amount of time and labor expended by Plaintiffs' counsel, though vast, was commensurate with the requirements of this matter. The Court also notes that while Braun's prior counsel described the amount of hours claimed by the Plaintiffs as "grossly excessive" (Doc. 204 at 1), neither he nor his client has identified a single hour of work performed by any of Plaintiffs' several attorneys that was unnecessary or duplicative.

### B. The novelty and difficulty of the questions

As noted previously, many of the questions at issue in this case were both complicated and intricate, requiring painstaking analysis by the parties. In addition, the Eleventh Circuit Court of Appeals published two opinions in this matter, presumably to provide guidance regarding the new or complex issues of copyright law it raised.

### C. The skill required to perform the legal service properly

As described above, the legal services needed in this case required a greater than average amount of skill.

**D.      The preclusion of other employment by the attorney due to acceptance of the case**

The Plaintiffs do not suggest that this factor is present in the instant case.

**E.      The customary fee**

The Court has previously determined that a fee of $200 per hour is appropriate for the work performed by Phillips and Corbett in this matter (Doc. 141), and neither Braun nor his previous counsel has provided valid grounds for reassessing this rate.  However, the Court agrees with Doppelt that the $330 per hour charged by Keel exceeds the rate that would have been charged by an attorney with comparable experience in the Orlando area in 2001.  At the hearing, Doppelt estimated that an attorney of like experience would have charged approximately $295 per hour. Based on the undersigned's experience with Orlando-area legal fees, the Court finds that a fee of $300 per hour would be reasonable for the work performed by Keel in this matter.  In addition, the Plaintiffs have not provided any information from which the Court could assess the reasonableness of the rates charged by other members of Keel's firm, whose fees make up approximately $22,500 of the $108,139.50 sought in connection with Keel's work.  (Doc. 202-4 at 5).  As such, the Court will reduce the entire $108,139.50 by ten percent, not just the portion representing Keel's fee.

The Court again notes that while Braun's previous counsel described the hourly rate charged by Plaintiffs' attorneys as "excessive," he did not provide any support for such a conclusion – with one exception.  The exception concerns Phillips, an in-house attorney for Star's Edge.  Braun's previous counsel argued that the fact that she was on salary precludes the Plaintiffs from receiving an award of attorneys' fees for the work she performed.  (Doc. 204 at 5).  But he provides no case law in support of this argument, which is contradicted by precedent in this and

-7-

other circuits. *See*, *e.g.*, *Central States, Southeast and Southwest Areas Pension Fund v. Central Cartage Co.*, 76 F.3d 114, 116 (7th Cir. 1996) (Easterbrook, J.) (awarding fees at market rate for work performed by plaintiff's salaried staff counsel and stating, "Opportunity cost, rather than cash outlay, is the right way to value legal services.  The going rate for comparable legal services in the market reveals that cost directly, avoiding a complex inquiry likely to produce a comparable figure.").  The Court finds that the Plaintiffs are entitled to an award for the work performed by Philips in this matter.

### F. Whether the fee is fixed or contingent

So far as the record discloses, the fees for all attorneys other than Phillips were fixed, and the Court does not find that this factor impacts the award.

### G. Time limitations imposed by the client or the circumstances

Neither side argues that time limitations affected the attorney's fees in this matter.

### H. The amount involved and the results obtained

Braun and his previous counsel both argue that the fee award sought (more than $500,000) is grossly disproportionate to the amount recovered in this case.  Though essentially accurate, this comparison misses the point.  Although the Court only awarded Palmer $36,000 [5] in statutory damages, much more than that amount was "involved" in this case. Braun's copyright infringement threatened the Plaintiffs' entire business, which was based on limited access to Palmer's teachings.

---

[5] Palmer was also awarded $20,000 on one of his libel claims, but that tort does not carry with it any entitlement to an award of attorney's fees.

**I.     The experience, reputation, and ability of the attorneys; the undesirability of the case; the nature and length of the professional relationship with the client; and awards in similar cases**

Neither side suggests that any of these last four factors applies to this award of attorneys' fees.

**J.     Miscellaneous**

Before calculating the total to be awarded, the Court notes that the Plaintiffs were earlier awarded a portion of their attorney's fees and costs as a sanction. (Doc. 139). The Plaintiffs have repeatedly stated, and the Court finds, that those fees and costs have not been included in the amount now sought. (Doc. 202 at 6). In addition, the Plaintiffs seek in this motion to recover fees and costs incurred on appeal, which the Plaintiffs have also applied to recover from the Eleventh Circuit Court of Appeals. The appellate court transferred the Plaintiffs' application to this court. (Doc. 214) The Court finds that recovery of the Plaintiffs' appellate fees and costs will advance the goals of the Copyright Act, as described above, and will award them as part of this order.

However, the Plaintiffs have not provided any support for their contention that they are entitled to an award of the fees and costs incurred in connection with Braun's bankruptcy proceedings. The Court finds that collection costs are not properly part of the "full costs" described in Section 505 and that an award of collection costs and fees would not advance the goals of the Copyright Act. The Court therefore declines to award any portion of the $44,214.91 sought for the California legal work. On the other hand, the Court finds that the $6,451.45 sought for the work of Sherri DeWitt and the $3,100 sought for the work of Ava Doppelt involved this case, not the bankruptcy case, and is therefore appropriately awarded under Section 505.

At the hearing the Plaintiffs sought to recover costs in addition to the $2,993.78 sought in their initial motion. (Doc. 202 at 8). However, the Plaintiffs did not provide any documentation of those additional costs, or even a total. The Court therefore declines to award costs beyond the initial $2,993.78 sought.

Finally, although the copyright claim was the most prominent – and by far the most hotly litigated – claim in this case, a significant portion of the Plaintiffs' attorney's fees were incurred in connection with claims that did not carry an entitlement to fees or upon which the Plaintiffs did not prevail. In proving up their fees, the Plaintiffs did not "break out" the fees incurred in connection with the copyright claim versus those incurred in connection with the other claims. Based upon the Court's familiarity with these proceedings, and after a review of the fee affidavits and testimony, the Court finds that approximately 70 percent of the attorneys' efforts were directed toward the copyright claim or, at least, would have been incurred even in the absence of the non-copyright claims. The Court will therefore reduce the final amount awarded to the Plaintiffs by 30 percent.

**K.    The calculation**

    1.    Fees

| | | |
|---|---|---|
| a. | Craig Corbett | $44,900 |
| b. | Penny Phillips | $367,800 |
| c. | Patrick Keel | $97,325.55[6] |
| d. | Sherri DeWitt | $6,451.45 |

---

[6]This amount is 90 percent of the $108,139.50 originally sought in connection with Keel's work.

      e.      Ava Doppelt      $3,100

      f.      Subtotal      $519,577

    2.    <u>Costs</u>

$2,993.78

    3.    <u>Adjustment</u>

$519,577 x 0.7 = $363,703.90

    4.    <u>Total</u>

$363,703.90 + $2,993.78 = $366,697.68

**IV. Conclusion**

In consideration of the foregoing, it is hereby

**ORDERED** that the Plaintiffs' Motion for Attorney Fees (Doc. 202) is **GRANTED IN PART** and **DENIED IN PART,** and the Plaintiffs are awarded a total of $364,527.68, as detailed above. The Clerk will enter judgment and close this file.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on November 18, 2005.

                                                              GREGORY A. PRESNELL
                                                    UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party